THE STATE OF OHIO, APPELLEE, *v.* YOUNG, APPELLANT.

(No. C-800520—Decided July 1, 1981.)

*Mr. Richard A. Castellini,* city solicitor, and *Mr. John L. Hanselman, Jr.,* for appellee.

*Mr. John W. Hauck,* for appellant.

*Per Curiam.* This cause came on to be heard upon an appeal from the Hamilton County Municipal Court.

Appellant advances a single error assignment and her version of the issue presented thereby as follows:

"Assignment

"The trial court erred to the prejudice of defendant-appellant in overruling her pretrial motion to dismiss.

"Issue

"The denial of a motion to dismiss is contrary to law where the period of limitation within R.C. 2901.13(A) has ex-

pired and the state fails to prove that it 'discovered the offense' and commenced prosecution within the time authorized by R.C. 2901.13(B).''

The "assignment" and "issue" substantially point up the issue *sub judice,* but there are other relevant developments in the overall scenario. The complaint against the appellant was filed April 8, 1980, and, in pertinent portions, alleges:

"Thomas H. Streicher [Hamilton County Welfare Department investigator], being first duly cautioned and sworn, deposes and says that Geraldine Young on or about December 2, 1976, in Hamilton County, and State of Ohio, with purpose to secure the payment of Aid to Dependent Children & Food Stamps did knowingly make a false statement(s), contrary to and in violation of Section 2921.-13(A)(4) of the Revised Code of Ohio.

"The complainant states that this complaint is based on her signature endorsing welfare assistance checks and food stamp cards received and cashed by her for the months of December 1976 through April 1977. Each check includes a statement that she did report all of her income to the Hamilton County Welfare Department. She did not."

The defendant's motion to dismiss was based upon the fact that the charge of falsification was not filed within one year from the time the fraud was discovered by the welfare department. The municipal court overruled the motion to dismiss whereupon defendant-appellant withdrew her plea of not guilty and entered a plea of no contest. The court then found her guilty and passed sentence. This appeal ensued.

Since more than two years passed from the date of the misdemeanor offense (latest, April 1977), to the date of the filing of the complaint (April 8, 1980), in order to prosecute the state must rely upon the one-year saving provision of R.C. 2901.13(B). This statute provides in pertinent part:

"(A) Except as otherwise provided in this section, a prosecution shall be barred unless it is commenced within the following periods after an offense is committed:

"* * *

"(2) For a *misdemeanor* other than a minor misdemeanor, *two years;*

"* * *

"(B) If the period of limitation provided in division (A) of this section has expired, prosecution *shall be commenced for an offense of which an element is fraud or breach of a fiduciary duty, within one year after discovery of the offense* either by an aggrieved person, or by his legal representative who is not himself a party to the offense." (Emphasis added.)

The evidence adduced in the municipal court indicates some awareness on the part of the Hamilton County Welfare Department, or its legal representative, the Welfare-Social Security Match Project,[1] by June 5, 1978, of the questionable veracity of defendant-appellant in the filing of official statements with the welfare department. Evidence tends to support that on that date Match Project sent to defendant-appellant's employer a form eliciting certain compensation information. Moreover, testimony of the said employer supports the fact that he was sent such a form by the Match Project in

---

[1] The welfare department investigator explained the Match Project in this manner:

"Q. [Asst. City Prosecutor] Okay. Can you explain what you are talking about by match, a computer match?

"A. [Investigator] This is a unit that was brought into use by the Health, Education and Welfare Department where people who are welfare recipients — Their social security number is matched with the State of Ohio with — I believe it's the income tax forms to see what income they have. If they discover that there is income [that these welfare recipients have, outside income] other than welfare, then we are given the referral to investigate it."

1978; also the employer verified that a welfare representative contacted him by telephone in 1978 about defendant-appellant's employment and pay.

The state of the record makes it difficult to ascertain precisely when in 1978 the Match Project — acting as the county welfare department's representative and agent — obtained possession of the salary information from defendant-appellant's employer. However, a reasonable inference from the evidence is that the employer submitted the information on or before the last day of 1978, probably before. The investigator would have the trial court believe that the fraud was not discovered before May 21, 1979 — and possibly thereafter. We disagree and find that the "discovery" by the welfare department or the Match Project, acting as its agent, occurred (or must be held to have occurred) at the absolute latest within a reasonable period after December 31, 1978. The investigator's subjective determination of the time of "discovery" — as sincere as it may be — is not ultimately controlling as to the time of "discovery." In other words, neither the welfare department nor its agent, Match Project, could procrastinate with impunity when they had in their possession information and/or materials which indicated fraud.

We reiterate the viewpoint noted in our *State* v. *Barker* (Aug. 6, 1980), No. C-790633, unreported, that the welfare department is entitled to some reasonable period from the time its employees or agents have an inkling of falsification until discovery of the fraud. We wrote in *Barker* that several weeks' investigation was not unreasonable before there could be an official "discovery of the offense." Simply checking for fraud cannot be said to be "discovery of the offense." However, the scrutinization cannot be an indefinite process. The time spread in the matter *sub judice* is vastly greater than the situation in *Barker*. In *Barker* we validated an approximate six-week in-

vestigation period necessary to discovery of the falsification; here we are not prepared to ratify an inquiry running at least from December 31, 1978, to May 21, 1979, almost five months, and very likely much longer than five months if the June 5, 1978, date on the form sent to defendant-appellant's employer is credited as an investigative date. We believe the tenor of the entire investigation commencing probably even in advance of June 5, 1978, suggests undue delay.

We agree with those authorities which hold that the state bears the burden of proving that the time when the crime was committed comes within the appropriate statute of limitations. Defendant-appellant's motion to dismiss squarely raised the issue of whether the action had been commenced within one year after discovery of her falsification, and the ultimate burden was the state's. *Cleveland* v. *Hirsch* (1971), 26 Ohio App. 2d 6 [55 O.O.2d 26].

The assignment of error is well taken. We reverse the judgment below and discharge the defendant-appellant.

*Judgment reversed and*
*defendant discharged.*

BLACK, P. J., KEEFE and DOAN, JJ., concur.