### State v. Hensley
*[Cite as 2 AOA 59]*

*Case No. 11410*
*Montgomery County, (2nd)*
*March 19, 1990*

*R.C. 2901.12*
*R.C. 2901.13*
*Crim. R. 14*

*Lorine Reid, Assistant Prosecuting Attorney, Appellate Division, 41 N. Perry Street, Dayton, Ohio 45402, Attorney for Plaintiff- Appellee.*

*James Armstrong, Suite 1311, 131 North Ludlow Street, Dayton, Ohio 454002, Attorney for Defendant-Appellant.*

WILSON, J.

After a bench trial, Richard Hensley was convicted of three counts of gross sexual imposition, R.C. 2907.05(A)(3), five counts of rape of a person under thirteen, R.C. 2907.02(A)(1)(b), and three counts of rape of a person under thirteen with force R.C. 2907.02(A)(1)(b) and 2907.02(A)(2). Hensley was sentenced to three concurrent two year terms of incarceration, consecutive to five concurrent terms of five to twenty-five years, consecutive to three concurrent life sentences, respectively. This matter is now before the court on Hensley's timely notice of appeal form said conviction. Hensley asserts six assignments of error, claiming that the judgment was against the manifest weight of the evidence, he was denied due process, several charges were barred by the statute of limitations, the trial court lacked venue over one count and should have granted his motions for severance and a bill of particulars. We will affirm in part and reverse in part.

During the time in question, Hensley lived in McMahan's Mobile Home Park in Dayton with his wife and son. He was employed by the trailer park as a maintenance man. The state alleges that from 1974 until 1987 Hensley molested six small children who lived in the trailer park. Each of the alleged victims was between four and ten years old at the time of the events, although some were adults by the time of the trial. Four were girls, while two were boys. The alleged sexual activities ranged from touching of erogenous zones to fellatio to one incident of anal intercourse. All but one of the purported crimes took place in either Hensley's trailer or the trailer parks' maintenance shed. The purported anal intercourse occurred in the men's shower at Crawford Campground in Clark County, Ohio. Hensley allegedly induced the children into having sexual relations by a combination of ice cream and threats against their families. In three instances, all involving the same boy, Hensley purportedly used force. Hensley denies having engaged in sexual activities with any of the children.

Hensley was originally indicted on two counts of gross sexual imposition involving one girl in 1987. However, further investigation uncovered more alleged victims. The indictment was amended several times until it finally consisted of fifteen counts of various sex offenses going back to 1974. One count was dismissed by the state when the complaining witness, now an adult living in another state with children of her own, failed to appear at trial. Hensley was found

not guilty on three counts of gross sexual imposition involving two children. He was found guilty of the remaining eleven counts and sentenced as reflected above.

For his first assignment of error, Hensley asserts that:

"The trial court erred in overruling appellant's motion to dismiss count four through fourteen of the indictment, as the statute of limitations had expired as to those counts."

As explained above, count fifteen was dismissed. Hensley was found not guilty of counts nine, thirteen, and fourteen. Therefore, we will address Hensley's argument as it pertains to counts four through eight and ten through twelve. These involve three counts of rape without force of Christopher Adams (counts four to six), two counts of rape without force of Samantha Adams (counts seven and eight), and three counts of rape with force of Patrick Dalton (counts ten to twelve).

All of the charges in the instant case are felonies. Subject to exceptions that will be discussed *infra*, the statute of limitations bars prosecution of a felony unless it is commenced within six years after the offense was committed. R.C. 2901.13 (A) (1). For purposes of this section, a prosecution is commenced when an indictment for the offense is returned. R.C. 2901.13(E). The first indictment that concerned alleged sexual activities with Christopher, Samantha, and Patrick was returned on June 17, 1988. Therefore, any alleged offense that occurred prior to June 16, 1982 is prima facie barred by the statute of limitations. The state has the burden of proving that any offense committed prior to that date falls into one of the enumerated exceptions to the statute of limitations. *State* v. *Young* (1981), 2 Ohio App. 3d 155.

Resolution of this issue is complicated by the fact that none of the indictments reflected specific dates that the offenses were to have occurred. Instead, the state chose to set forth ranges of dates. For example, each of the three counts involving the forcible rape of Patrick were alleged to have occurred between August 1, 1981 and December 31, 1986. Thus, in Patrick's case it is impossible to tell from the indictment alone whether the alleged offenses occurred before or after June 16, 1982. However, a careful examination of the record yields a more precise approximation of dates.

Patrick's testified that Hensley forcibly anally raped him at Crawford's Campground, which constituted count twelve, in late August or early September of 1986. T. 206. Count

eleven alleges that Hensley forcibly committed fellatio on Patrick in the maintenance shed. Patrick testified that this occurred when he was eight or nine years old. T. 196. Since Patrick was born on September 3, 1976, T. 160, the alleged rape occurred between 1984 to 1986. Count ten alleges that Hensley forced Patrick to preform fellation upon him in his trailer. Patrick testified that this occurred either when he was seven to eight years old, T.185, or six-and-a-half to seven, T.209, or somewhere between 1983 and 1985. Thus Patrick testified that each event occurred after June 16, 1982. Hensley presented no evidence to rebut Patrick's assertions as to the dates. Thus, the state has met its burden of proof as to these counts since the only evidence before the court indicates that the alleged forcible rapes of Patrick occurred within six years of the commencement of the prosecution. Therefore, Hensley's first assignment of error is found to be not well taken in regards to counts ten to twelve.

Both counts involving Samantha were alleged in the indictment to have occurred between January 1, 1974 to June 30, 1978. The dates of the counts involving Christopher range from January 3, 1976 to August 31, 1979. Thus, counts four through eight allegedly occurred prior to six years before the commencement of the instant prosecution. However, the state argues that these counts fall into the continuing course of conduct and undiscovered corpus delicti exceptions to the statute of limitations. We do not agree.

One exception to the statute of limitations is embodied in R.C. 2901.13(D):

"An offense is committed when every element of the offense occurs. In the case of an offense of which an element is a continuing course of conduct, the period of limitation does not begin to run until such course of conduct or the accused's accountability for it terminates, whichever occurs first."

The state argues that since Hensley was charged with a *series* of sex offenses against children, the statute of limitations did not begin to run on any of the offenses until the last offense occurred. We are not in accord.

We agree with the state that the offenses charged constitute a continuing course of criminal conduct. However, this fact is not relevant to statute of limitations issues. R.C. 2901.13(D) suspends the statute of limitations for crimes "of which *an element* is a continuing course of conduct." A continuing course of conduct is not an element of rape or gross sexual imposition. We may not simply ignore the explicit language

of the statute. This court id bound to construe this statute strictly against the state, and liberally in favor of the accused. R.C. 2901.04(A). To apply the state's reading would eviscerate the statute of limitations since it would allow prosecution of career criminals for any offense that they allegedly committed regardless of how long ago it occurred. We must interpret R.C. 2901.13(D) to mean that the General Assembly has chosen to limit this exception to crimes where a continuing course of conduct is necessary element for commission of the offense itself. For example, this court has held that under R.C. 2901.13(D) the statute of limitations on a zoning violation begins to run when the continuing violation ends, or the defendant's accountability for it ends (*i.e.*, the defendant sells the property), whichever occurs first. Since Hensley was not charged with a crime of this type, R.C. 2901.13(D) is not applicable.

The other exception that the state argues is applicable to the instant case is contained in R.C. 2901.13(F):

"The period of limitation shall not run during any time when the corpus delicti remains undiscovered."

"Corpus Delicti" is defined as the body or substance of a crime, which is composed of two elements: 1) The act itself; and 2) the criminal agency of the act. *State* v. *Black* (1978), 54 Ohio St. 2d 304, 307. Unfortunately, neither the statute nor the Supreme Court indicate Whose "discovery" of these two elements triggers the running limitation. The state argues that the corpus delicti remains "undiscovered" until the prosecutor learns of the purported offense, which in the instant case occurred less than one year before the return of an indictment. Hensley contends that even assuming arguendo that he committed the offenses, they were "discovered" at the time of their commission by the victims. Hensley also points out that many of the children reported the alleged crimes to parents, teachers, and counselors in some instances *years* before the prosecutor was informed. We find Hensley's argument to be more compelling one.

Our sister courts who have ruled upon this issue have held widely diverse opinions. As the state correctly points out, two courts have firmly stated that the corpus delicti remains "undiscovered" until the prosecutor learns of the alleged offense. *State* v. *Bull* (Nov. 30, 1983), Hamilton App. No. C-830049, unreported; *State* v. *Osborne* (July 27, 1987), Butler App. No. Ca 86-08-121, unreported. However, an equal number have held that the corpus delicti is "discovered" for statute of limitations purposes as soon as any competent person other than the wrongdoer (including the victim) learns of it. *State* v. *Sutter* (Nov. 15, 1989), Summit App. No. 13749, unreported (the later of which expressly rejects *Osborne, supra*).

The cases cited by the state can be distinguished from the instant matter. The defendant in *Osborne* was convicted of twice committing arson on his photography studio, in 1979 and 1985. After the 1979 fire, Osborne's accomplice told the police and insurance company that she had accidentally started the blaze. No further investigation was made at that time. However, when Osborne's business again burned down in 1985 arson was suspected, and the investigation of the 1979 fire was reopened, eventually uncovering that both fires were deliberately set. The butler County court of Appeals Ruled that the statute of limitations did nor bar prosecution of the first arson because even though the fact that there was a fire known in 1979, its criminal nature (the second element of corpus delicti) was "undiscovered" until 1985. This is entirely compatible with Hensley's position since the criminal nature of the 1979 fire was unknown to *anyone* other than the wrongdoer and his accomplice, until the prosecutor learned of it in 1985. The victim, in that case, the insurance carrier, learned of it after the prosecutor. *Buhl*, which involved a dentist convicted of touching the erogenous zone of patients in his care, is similarly distinguishable. In holding that prosecution was not barred by the passage of time, the Hamilton County Court of Appeals observed that there was no evidence before it when the corpus delicti was "discovered", other than that the prosecutor had learned of it only three months before trial. Given the dentist-patient relationship, it is conceivable that the victim were under the influence of anesthetics or other drugs when the crimes were perpetrated, and were thus unaware of any sexual contact. In that case, the first element of corpus delicti would not be met since the fact that any act at all had occurred would be unknown to *anyone* other than the wrongdoer.

It has been observed that in child molestation cases the victims are sometimes unaware of the criminal nature of the abuse, due either to their tender years of the fact that the crimes have been repeated so often that the victim comes to think that molestation is a common place occurrence. See, *e.g.*, *Alexander, supra*. We agree that in that case the corpus delicti would remain "undiscovered" because no

one other than the wrongdoer would have knowledge of the criminal agency. This problem does not present itself in the case at bar however. It is clear from the record that Samantha understood the wrongness of Hensley's act since she testified that she and her brother, Cristopher, tried to avoid Hensley during all of the years that they lived in the trailer park. T. 273-4. An equal understanding can be inferred from Cristopher's testimony that at seven years old he contemplated murdering Hensley with a hammer but abandoned the idea out of fear of going to jail. T 196-8. Furthermore, it cannot seriously be contended that Samantha and Christopher's parents or their counselor did not appreciate the criminal nature of the molestations after the children informed them of the events.

The argument can be made that we should analogize the criminal statutes of limitations to a civil statute of limitations, and hold that since the plaintiff in a criminal case is the state, the limitation should run from the point where the state discovers the offense. However, courts have long held that civil and criminal statutes of limitations are very different devices. Civil limitations are statutes of repose while criminal ones are an absolute bar to prosecution. *Benes* v. *U.S.* (1949), 276 F. 2d 99; *Cleveland* v. *Hirsh* (1971), 26 Ohio App. 2d 6. Furthermore, it is not clear whether this analogy would support the state's position if taken to its logical extreme.

It is unquestionable that a criminal cause of action belongs solely to the state, just as a civil one belongs to the plaintiff. To argue that this fact means that a crime is "discovered" when the state learns of its occurrence is to, in effect, apply the civil "discovery rule" to criminal cases. In civil cases the statute of limitations begins to run when the plaintiff *knows*, or by the exercise of reasonable diligence *should have known*, that he had been injured by the defendant's conduct. *O'Stricker* v. *Jim Walter Corp.* (1983), 4 Ohio St. 3d 84. In the instant case, Samantha, Christopher, their parents, and their counselor knew of the events. Each of these persons had a duty to report a felony of which they had personal knowledge. R.C. 2921.22(A). Moreover, the counselor had a duty to report suspected child abuse under R.C. 2151.421. It has been held that when one who is obligated to inform the state of a crime learns of such an offense, his knowledge may be imputed to the state for purposes of determining when the corpus delicti was discovered. *Sutter, supra.* Given the duty to inform the state owed by the several people who knew of the offenses, it is arguable that the state,

with reasonable diligence should have know of Hensley's actions. It is public policy to encourage citizens to report crimes. Applying the state's interpretation of the statute of limitations would thwart this goal.

In many ways the civil suit that is most analogous to a criminal case is a wrongful death suit. The cause of action in a wrongful death suit belongs to the plaintiff but is based upon wrongs done to third party, the decedent. Likewise, a criminal cause of action belongs to the state but is based upon wrongs done to a third party, the victim. It has been held that the statute of limitations on a wrongful death suit begins to run when the decedent dies, regardless of the fact that the plaintiff did not discover the decedent's death until much later. *Johnson* v. *Koppers Co.* (1981, N.D. Ohio), 524 F.Supp. 1182; *Bazdar* v. *Koppers Co.* (1981, N.D. Ohio), 524 F.Supp. 1194. Thus, is civil suits wherein the plaintiff and victim are not one and the same, the tolling of the statute of limitations is made in relation to the person who was wronged, not the party who possesses the cause of action. We see no reason why the same rationale should not apply to criminal cases.

If the state's reading of the statute of limitations were applied, prosecution for even a minor misdemeanor could occur fifty years after the offense was committed. Such a result is not only absurd, but also is anathema to any rational concept of due process. A fair trial must be had upon reasonably fresh evidence. If the offense of which a person is accused is too remote in time, it is almost impossible for him to account for his whereabouts or actions, or indeed to mount any defense at all. It would also expose the offender to blackmail, since someone privy to the crime could threaten to reveal it to the prosecutor years after its occurrence. This would shatter the certainty in affairs that statutes of limitations are supposed to provide. Moreover, society's need to be protected from wrongdoers diminishes with the passage of time, because if he has continued to commit crimes, he can be prosecuted on the more recent offenses which do fall within the statute of limitations. Finally, if the state could bring a criminal action so long after the event, there would be little incentive to promptly and efficiently investigate crimes. In fact, there might even be incentive for the state to remain purposefully ignorant of the facts so that the prosecution could be begun at some point in the future when it would be more convenient or advantageous for the state. Since the express purpose of our criminal statute of limitations is to discourage inefficient or dilatory law

enforcement, Committee Comment to H5ll, we will not thwart the General Assembly's intent by applying the state's reading of R.C. 2901.13(F).

The term "undiscovered" is at best ambiguous. The ordinary meaning of the term is "not discovered: hidden, unexplored." Webster's New International Dictionary Unabridged 2491 (1969). Something that is hidden per se is hidden to everyone. Thus, if the plain meaning rule of statutory construction is applied, the corpus delicti is "discovered" when anyone learns of its existence. An example of an "undiscovered" corpus delicti would be the theft of money from a safe deposit box, where the box remained unopened for many years. We must construe ambiguous criminal statutes strictly against the state. R.C. 2901.04(A). Due process requires no less. *State* v. *Dickinson* (1971), 28 Ohio St. 2d 65. Therefore, we must apply Hensley's reading. We hold that when any competent person other than the wrongdoer or someone *in pari delicti* with him has knowledge of both the act and its criminal nature, the offense has been "discovered" for purposes of R.C. 2901.13(F), and the statute of limitations begins to run at that point. This includes "discovery" by the victim. Accordingly, since the crimes against Samantha and Christopher were "discovered" more than six years prior to commencement of this action, prosecution is barred.

Hensley's first assignment of error is found to be well taken as to counts four to eight, and the convictions thereon will be reversed. Said assignment of error is found to be not well taken as to the remaining counts.

For his second assignment of error, Hensley asserts that:

"The appellant was deprived of his constitutional rights to due process of law under the fifth and fourteenth amendments to the united states constitution by the proceedings in the trial court."

Most of Hensley's arguments in support of this assignment are merely recapitulations of his other five assignments of error. The constitutional implications of these arguments are discussed under the appropriate assignments of error.

Hensley also argues that he was denied due process in that the indictment against him was amended several times prior to trial. On this subject, the Supreme Court has held that:

"It is clearly within the discretion of the trial court to amend an original indictment under Criminal Rule 7 (D) where the offenses consolidated are part of a continuing course of criminal conduct . . ." *State* v. *Cooper* (1977), 52 Ohio St. 2d 163. As was stated *supra*, we find that the conduct at issue was a continuous course of criminal conduct. The trial court did not abuse its discretion.

Hensley's final argument is that he was denied due process by the trial court's having overruled several motions for discovery. The trial court overruled a request for medical exams because none were in the State's possession. Hensley was denied victim-witness interviews under Crim. R. 16(B)(2), because they were the prosecutor's "work product." A request for the victims' school records was denied pursuant to Crim. R. 16(B)(1)(c). The trial court denied a request for psychological examinations of the children, on the grounds that it was of no probative value and was a pretext to "try the victim rather than the offender;" citing our decision in *State* v. *Craver* (Apr. 24, 1989), Mont. App. No. 11101, unreported. Hensley cites no authority for his proposition that these decisions denied him due process. Instead he argues that although each decision standing alone is not in error, taken as a whole they amount to an unfair procedure. We can find no precedent for this unique proposition of law. We find no errors of constitutional significance.

The second assignment of error is found to be not well taken.

For his third assignment of error, Hensley asserts that:

"The trial court committed prejudicial error by overruling appellant's motion for a bill of particulars."

We disagree.

Hensley twice moved for a bill of particulars, and both motions were denied. These decisions cannot be disturbed unless Hensley can show an abuse of discretion. *Wong Tai* v. *United States* (1927), 273 U.S. 77; *State* v. *Halleck* (1970), 24 Ohio App. 2d 74. In applying this standard, the Supreme Court has stated that:

The purpose of an indictment is to inform the accused of the "nature of the offense with which he is charged. If the indictment does this, then the court does not abuse its discretion in failing to order a bill of particulars." *Boynton* v. *Sacks* (1962), 173 Ohio St. 526, 529.

The trial court found that not only did the indictment adequately inform Hensley of the charges, but also his motion was moot because the state had provided him with a detailed "flowchart" more particularly describing the acts alleged to constitute the offenses, and the time and place of their occurrence. Nothing in the

record indicates that this was an abuse of discretion.

Hensley also argues that he was entitled to a bill of particulars because the state did not allege an exact date on which each offense was alleged to have occurred. We agree with the trial court that since it is undisputed that the victims were all under the statutory age of thirteen, preciseness as to date is not an essential element of the crime at issue, and lack of such specificity is not fatal to the charges. *State* v. *Sellards* (1985), 17 Ohio St. 3d 169; R. C. 2941.08(B). Furthermore, since Hinders has not shown that the state possessed a more precise approximation of dates, he cannot show prejudice. *State* v. *Madden* (1984), 15 Ohio App. 3d 130.

The third assignment of error is found to be not well taken.

For his fourth assignment of error Hensley asserts that:

"The trial court erred in overruling appellant's motion to dismiss count twelve of the indictment, the trial court lacking jurisdiction and venue as that offense was alleged to have occurred in Clark County, Ohio."

Count twelve involves the alleged forcible anal rape of Patrick Dalton. This event took place in Clark County, unlike the other fourteen counts in the indictment which allegedly took place in Montgomery County. Hensley argues that he should have received a separate trial in Clark County on count twelve. We do not agree.

As a general rule, criminal cases must be tried in the territory wherein the offense or any element thereof was committed. R.C. 2901.12(A). However, this same statute also directs that:

"(H)When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all such offenses in any jurisdiction in which one such offense or any element thereof occurred. Without limitation on the evidence which may be used to establish such course of conduct, any of the following is prima-facie evidence of a course of criminal conduct:

"(1)The offenses involved the same victim, or victims of the same type or from the same group.

"* * *

"(5)The offenses involved the same or a similar modus operandi."

It is well established that a series of sex offenses against children under thirteen years old does constitute a 'course of criminal conduct' for purposes of R.C. 2901.12(H). See, *e.g.*, *State* v. *Fowler* (1985), 27 Ohio App. 3d 149. Count twelve involved the same victim as counts ten, eleven, thirteen, and fourteen. Each of the six victims were "of the same type or from the same group"; residents of McMahan's Mobile Home Park between the ages of four and ten. A similar modus operandi was employed in that the victims were enticed by promises of candy and ice cream and then told that if they related what happened, their families would be hurt. Accordingly, we find no error in trying count twelve along with the other fourteen counts.

For his fifth assignment of error, Hensley asserts that:

"The trial court committed prejudicial error by overruling appellant's motion for severance."

We do not agree.

Multiple offenses may be joined if they are of the same or similar character or are part of a course of criminal conduct. Crim. R. 8(A). Hensley was charged with rape and gross sexual imposition of six victims under thirteen years old. We find that these offenses are of the same or similar character, and as has been stated *supra*, we find that the offenses constitute a course of criminal conduct. Therefore, joinder was permissible under Crim. R. 8(A). Hensley has the burden of proving that the denial of severance amounted to an abuse of discretion which prejudiced his defense. *State* v. *Torres* (1981), 66 Ohio St. 2d 340. The record in the instant case does not indicate any prejudice to Hensley. Since this was a bench trial, we may presume that the trial court was not swayed by the number or nature of the charges, nor did it consider evidence that was admissible in one count in determining another count where that evidence was inadmissible. In the face of a silent record, Hensley's bare assertion that the denial of severance resulted in his waiver of a jury trial, or that it caused him to testify as to all counts instead of some, cannot prevail. *State* v. *Long* (1984), 20 Ohio App. 3d 377.

Hensley's fifth assignment of error is found to be not well taken and will be overruled.

Henley's sixth assignment of error asserts that:

"The trial court erred in entering a judgment of conviction against appellant, as said judgment is against the manifest weight of the evidence."

We are not in accord.

Judgments supported by some competent, credible evidence going to all of the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *State* v. *Nicely* (1988), 39 Ohio St. 3d 147. As to all of the counts other

than ten and eleven, which involve two of the three forcible rapes of Patrick Dalton, Hensley's argument is that the children's testimony was too imprecise as to time, location, and circumstances to be credible. We do not agree. The courts of this state have recognized that due to the trauma involved and the nature of the crime itself, child-victims of sexual abuse are often imprecise as to time and details of the offense. See, *e.g.*, *State* v. *Gingell* (1982), 7 Ohio App. 3d 364. Contrary to Hensley's assertions, there is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction. *Id.* at 365. We find that there was enough credible evidence that the judge could have found beyond a reasonable doubt that Hensley committed the offenses charged.

Hensley's more interesting argument is that the finding that he used force in the acts charged as counts ten and eleven was against the manifest weight of the evidence. Although we find this argument to be more persuasive than the previous one, it too must fail.

In order for a trial court to sentence an offender to life in prison, as was done in the instant case, the minor must have been purposely compelled to submit to sexual relations by force or threat of force. R.C. 2907.02(B). Hensley contends that no evidence of force or threat of force was presented by the state. As to count ten, Patrick [h]e was enticed into performing fellatio on Hensley by a promise that "I'd get sugar if I sucked on his penis." T. 184. As to count eleven, Patrick testified that he followed Hensley into the maintenance shed when asked to do so, whereupon the defendant performed fellatio on him. T. 197. It is true that neither of these events involves the use or threat of force as depicted above. However, prior to explaining the details of counts ten and eleven, Patrick testified that:

"Well, when I was there, okay, he called to me. And it was the time after I was six years old because my sister was born and she had Downs Syndrome and everything, and *whenever he said anything for and after and during, he said if I ever told* -- this was our secret -- I was bad because of what we did -- he was trying to help me, that if I told nobody would believe me. *He'll kill my sister. He'd burn my house.* And he said if I told, my parents would hate me. He said they'd give me back because I'm adopted." T. 183-4 (emphasis added).

We must view all of the evidence taken as a whole, and do so in the light most favorable to the state, to determine whether *any* rational trier

of fact could have found beyond a reasonable doubt that Hensley used force. *Jackson* v. *Virginia* (1979), 443 U.S. 307, 319. Given this standard, the trial court could rationally have found that the evidence taken as a whole showed that "whenever" Hensley molested him, including counts ten and eleven, he would threaten "[Be]for and after and during" the molestation to kill Patrick's sister and burn his home. This would certainly constitute a threat of force. It is not this court that must be convinced by the evidence but the finder of fact. *State* v. *Thomas* (1982), 70 Ohio St. 2d 79. Therefore, it was not against the manifest weight of the evidence to have found that Hensley used the threat of force.

Hensley's conviction on counts four through eight, inclusive, will be reversed as said charges are barred by the statute of limitations. The remainder of the trial court's judgment will be affirmed.

*Judgment affirmed in part, reversed in part.*

BROGAN, J. and FAIN, J., Concur.