

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant, | ) | WD81570 |
| | ) | |
| v. | ) | OPINION FILED: March 26, 2019 |
| | ) | |
| CALE D. SEYMOUR, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Johnson County, Missouri**
The Honorable Sue Dodson, Judge

Before Division One: Cynthia L. Martin, Presiding Judge, Thomas H. Newton, Judge
and Gary D. Witt, Judge

The State appeals the trial court's grant of a motion for judgment of acquittal in a case charging Cale Seymour ("Seymour") with the misdemeanor of failing to insure workers' compensation liability in violation of section 287.128.7.[1] The judgment of acquittal was entered at the close of the State's evidence, and was based solely on the trial court's finding that the charged violation was time-barred pursuant to section 287.128.11

---

[1]All statutory references are to RSMo 2000, as supplemented through the offending period of August 2011 through October 2013, unless otherwise noted.

because it was filed more than three years after the discovery of Seymour's offense. Because the charge against Seymour was filed more than three years after the discovery of his offense, we affirm.

## Factual and Procedural Background

On February 3, 2014, the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation, Fraud and Noncompliance Unit (the "Fraud and Noncompliance Unit") received a referral, and began investigating Cale Seymour Construction, LLC ("Company") to determine whether it had failed to insure workers' compensation liability in violation of section 287.128.7. The Company was in the construction business. By law, it was required to maintain workers' compensation insurance at any time it had at least one employee.[2]

Through database searches conducted on February 3, 2014, a Fraud and Noncompliance Unit investigator discovered that Seymour was the organizer of the Company; that the Company was formed on December 30, 2005; that the Company had workers' compensation insurance nearly continuously from the time it was formed until August 3, 2011; that the Company did not appear to have workers' compensation insurance from August 3, 2011 through October 3, 2013; that the Company did have workers' compensation insurance after October 3, 2013; and that between August 3, 2011 through October 3, 2013, the Company reported having one or more employees in some quarters,

---

[2]Employers required to carry workers' compensation insurance include any person or limited liability company with one or more employees in the construction industry who "erect[s], demolish[es], alter[s], or repair[s] improvements." Section 287.030.1(1), (3).

and no employees in other quarters though wage reports stated that wages were paid by the Company in all quarters.

The Fraud and Noncompliance Unit investigator did not undertake any other investigation until mid-May, 2014, when the investigator began attempting to reach Seymour by telephone. The investigator successfully contacted Seymour on May 19, 2014. During the recorded telephone call, Seymour admitted that he employed one or more employees during all quarters between August 3, 2011 and October 3, 2013, and that he knew the Company did not have workers' compensation insurance as required during that time frame. In the days that followed the May 19, 2014 telephone call with Seymour, the investigator unsuccessfully attempted to gather information from Seymour's insurance agent.

In mid-June, 2014, the Fraud and Noncompliance Unit prepared a probable cause statement and referred Seymour's alleged offense to the Attorney General's Office for prosecution.

On May 17, 2017, the State charged Seymour with failure to insure workers' compensation liability in violation of section 287.128.7. At a bench trial on February 27, 2018, the State presented the testimony of the Fraud and Noncompliance Unit investigator. The investigator described how investigations of this nature are undertaken; the steps taken during the investigation of Seymour; how his investigation of Seymour modeled the steps ordinarily taken in investigations of this nature; and the decision to refer the case to the Attorney General. On cross-examination, the investigator offered no explanation for the time that elapsed between the February 3, 2014 database searches and the attempts that

3

began in mid-May, 2014 to contact Seymour, and acknowledged that no other steps were taken to investigate Seymour during the interim three month period.

At the close of the State's evidence, Seymour moved for a judgment of acquittal based upon the three-year statute of limitations set forth in section 287.128.11. Seymour argued that his offense was discovered as of February 3, 2014, and that the filing of charges more than three years later on May 17, 2017 was time-barred. The State argued that Seymour's offense was not discovered until May 19, 2014, and that the filing of charges on May 17, 2017 was not time-barred.

The trial court granted Seymour's motion for judgment of acquittal, and dismissed the proceedings. In a written judgment dated February 28, 2018 ("Judgment"), the trial court found:

> [A]fter considering the credibility of the testimony and evidence presented, [the Court] finds the discovery date of [Seymour's] alleged criminal conduct was February 3, 2014, that more than three (3) years elapsed before the filing of the State of Missouri's initial information and that in accordance with Section 287.128.11, this proceeding is now time barred.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that [Seymour's] Motion for Judgment of Acquittal at the Close of the State of Missouri's Case is hereby granted. This proceeding is dismissed [] as having not been timely brought within the applicable limitation.

The State filed this timely appeal.

## Appellate Jurisdiction

Before addressing the merits, we must determine whether we have jurisdiction to consider this appeal. *State v. Lilly*, 410 S.W.3d 699, 701 (Mo. App. W.D. 2013). That is because "'[t]he right to appeal is purely statutory and, where a statute does not give a right

4

to appeal, no right exists.'" *Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011) (quoting *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 859 (Mo. banc 2008)). If we "'lack[] jurisdiction to entertain an appeal, the appeal must be dismissed.'" *Lilly*, 410 S.W.3d at 701 (quoting *Walker v. Brownel*, 375 S.W.3d 259, 261 (Mo. App. E.D. 2012)).

Rule 30.01(a)[3] provides that "after the rendition of final judgment in a criminal case, every party shall be entitled ***to an appeal permitted by law***." (Emphasis added.) The State's right of appeal is purely statutory, and is controlled by section 547.200. *State v. Connell*, 326 S.W.3d 865, 866-67 (Mo. App. W.D. 2010) ("[W]here a statute does not give [the State] a right to appeal, no right exists."). Relevant to this case, section 547.200.2 provides in pertinent part that:

> The state, in any criminal prosecution, shall be allowed an appeal in . . . all [] criminal cases ***except in those cases where the possible outcome of such an appeal would result in double jeopardy for the defendant***.

(Emphasis added.) If appeal of the Judgment would result in double jeopardy for Seymour, the State has no right of appeal, requiring dismissal of this appeal.

The State argues that its appeal of the Judgment will not result in double jeopardy for Seymour as he was acquitted on a basis not related to factual guilt or innocence. We agree.

For purposes of the Double Jeopardy Clause:[4]

> [A] defendant who has been released by a court for reasons required by the Constitution or laws, but which are unrelated to factual guilt or innocence, has not been determined to be innocent in any sense of that word, absolute or otherwise. In other circumstances, [courts] ha[ve] had no difficulty in

---

[3]All rule references are to *Missouri Court Rules, Volume I—State, 2018* unless otherwise indicated.
[4]Both the United States Constitution and the Missouri Constitution provide individuals with protection from double jeopardy. U.S. Const. amend. V; Mo. Const. art. I, section 19.

5

distinguishing between those rulings which relate to "the ultimate question of guilt or innocence" and those which serve other purposes.

*United States v. Scott*, 437 U.S. 82, 98 n. 11 (1978) (internal citations omitted). Rulings that "serve other purposes" include "procedural dismissals" such as "'a legal judgment that a defendant, although criminally culpable, may not be punished.'" *Evans v. Michigan*, 568 U.S. 313, 319 (2013) (quoting *Scott*, 437 U.S. at 98). "[A] defendant is acquitted [on the ultimate question of guilt or innocence] only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.'" *Scott*, 437 U.S. at 97 (quoting *United States v. Martin Linen*, 430 U.S. 564, 571 (1977)). The statute of limitations is "not an element of the crime charged." *State v. Coor*, 740 S.W.2d 350, 356 (Mo. App. S.D. 1987) (holding that State's appeal of dismissal of charges based on the statute of limitations would not result in double jeopardy even though court heard evidence to decide the issue).

Here, though the trial court heard all of the State's evidence bearing on the issue of Seymour's guilt or innocence before considering and ruling on Seymour's motion for judgment of acquittal based on the statute of limitations,[5] the trial court did not determine the question of Seymour's guilt or innocence when it granted the motion for judgment of acquittal. Instead, the trial court released Seymour for a procedural reason required by law that was unrelated to Seymour's guilt or innocence. Midtrial dismissal of a case on the

---

[5]The State's Brief suggests that Seymour did not raise the issue of the statute of limitations until the close of the State's evidence. Seymour's Brief argues that he electronically filed a motion addressing the statute of limitations immediately before trial. Regardless, it is plain from the trial transcript that the trial court did not address the statute of limitations defense until that topic was raised by Seymour at the close of the State's evidence. For reasons we explain, *infra*, the timing of Seymour's filing of a motion raising the statute of limitations defense is irrelevant, as no one contests that the issue was raised before disposition of the case.

6

basis of the statute of limitations is no less a dismissal unrelated to guilt or innocence than if the defense is raised and ruled pretrial. *See Scott*, 437 U.S. at 99 (holding that where a defendant prevails on a midtrial motion to dismiss on grounds unrelated to guilt or innocence, it is not improper to terminate the proceedings on those grounds, and "a defendant [who] prevails on such a motion [] [takes] the risk that an appellate court will reverse the trial court" requiring a new trial). This is consistent with the fact that the statute of limitations is an affirmative defense that can be permissibly "raised . . . before a final disposition of the case." *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012); *see also, State v. Cotton*, 295 S.W.3d 487, 490 (Mo. App. E.D. 2009) (holding the affirmative defense of the statute of limitations must be raised in a criminal case "'before final disposition of the case whether by conviction or plea, or it is waived'") (quoting *Longhibler v. State*, 832 S.W.2d 908, 910 (Mo. banc 1992)).

We conclude that the State's appeal of the Judgment is statutorily authorized by section 547.200.2 as the outcome of this appeal will not result in double jeopardy for Seymour. Accordingly, we have jurisdiction to consider the State's appeal.

**Analysis**

The State's sole point on appeal asserts that the trial court erred in granting Seymour's motion for judgment of acquittal on the basis of the statute of limitations because its prosecution of Seymour for violation of section 287.128.7 was not time-barred by section 287.128.11. Specifically, the State argues that the charge against Seymour was filed within three years of discovery of Seymour's offense. "The determination of whether

7

or not a statute of limitations applies is a question of law and is reviewed *de novo*." *State v. McMillian*, 524 S.W.3d 51, 53 (Mo. App. W.D. 2016).

Section 287.128.7 provides that an employer "who knowingly fails to insure his liability" pursuant to the Workers' Compensation Law is guilty of a class A misdemeanor. Section 287.128.11 sets forth the statute of limitations applicable to violations of section 287.128.7, and provides:

> Any prosecution for [] violation of [section 287.128.7] [] shall be commenced within three years after ***discovery of the offense*** by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is not party to the offense.

(Emphasis added.)

The Fraud and Noncompliance Unit is the State's investigative unit, and is "responsible for investigating incidences of fraud and failure[s] to comply" with section 287.128. Section 287.128.10; *see also* section 287.128.8 (requiring the Fraud and Noncompliance Unit to investigate complaints submitted by "[a]ny person"). As the State's statutorily authorized investigative unit, the Fraud and Noncompliance Unit is "a person who has a legal duty to represent an aggrieved party." *State v. Frese*, 487 S.W.3d 71, 75-76 (Mo. App. W.D. 2016). Thus, the statute of limitations for prosecuting Seymour's alleged violation of section 287.128.7 began to run pursuant to section 287.128.11 "after discovery of [Seymour's] offense" by the Fraud and Noncompliance Unit.

The phrase "discovery of the offense" is not defined by section 287.128. The meaning of the phrase "discovery of the offense" was discussed, however, in *Frese*. 487 S.W.3d at 76-78. *Frese* concluded that because the Fraud and Noncompliance Unit is the

8

State's statutorily authorized investigative unit with authority to refer an investigated file to the Attorney General for possible prosecution, "the phrase 'discovery of the offense by a person who has a legal duty to represent an aggrieved party' contemplates . . . *the discovery of a referable offense* by the State's investigative agent." *Id*. at 76 (emphasis added). *See also, id*. at 77 (holding that when the Fraud and Noncompliance Unit "discovered all the facts necessary to refer the offense to the Attorney General for prosecution," the statute of limitations accrual period was triggered). *Frese* applied that definition to conclude that "discovery of the offense" was not delayed, as the State had argued, to the point when a matter is *actually* referred to the Attorney General, but instead occurs when the facts "necessary" to refer the offense have been discovered by the Fraud and Noncompliance Unit. *Id*. at 75, 77.

Here, we must decide when, during an investigation, the Fraud and Noncompliance Unit has discovered the facts necessary to refer an offense so as to trigger section 287.128.11's accrual period. That question was not at issue in *Frese*.[6]

Seymour argues that the Fraud and Noncompliance Unit discovered his alleged offense on February 3, 2014, because as of that date, the investigator had discovered enough facts to refer his offense to the Attorney General, and learned nothing more during the balance of the investigation not already known or suspected. The State argues that the Fraud and Noncompliance Unit discovered Seymour's offense on May 19, 2014, because

---

[6]*Frese* had no reason to address when the Fraud and Noncompliance Unit should be deemed to have discovered facts "necessary" to refer a matter during an investigation. *Frese* found only that as between actual referral of a matter to the Attorney General, and the last reported step in the Fraud and Noncompliance Unit's investigation (which happened to be a phone call to the employer), discovery of the offense occurred at the end of the investigation. 487 S.W.3d at 75-77.

9

on that date, Seymour confirmed that he had least one employee and no workers' compensation insurance at all times between August 3, 2011 and October 3, 2013. Because section 287.128.7 requires a "knowing"[7] failure to insure workers' compensation liability, the State argues that Seymour's admissions were facts necessary to discover a referable offense.

Both parties' arguments presume that the definition of "discovery of the offense" announced in *Frese* contemplates the subjective, hindsight dissection of an investigation to pinpoint the precise moment when facts sufficient to refer a matter were first discovered. *Frese* cannot be fairly read in this manner. *Frese* explained that "'[t]he primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language.'" 487 S.W.3d at 75 (quoting *State v. Graham*, 204 S.W.3d 655, 656 (Mo. banc 2006)). "'[I]n ascertaining legislative intent . . . the entire act must be construed together and all provisions must be harmonized.'" *Id.* (quoting *Eminence R-1 Sch. Dist. v. Hodge*, 635 S.W.2d 10, 13 (Mo. 1982)). Thus, the definition of "discovery of the offense" announced in *Frese* must be construed and applied in a manner that can be harmonized with the other provisions in Chapter 287.

Section 287.128.10 establishes the Fraud and Noncompliance Unit and renders it "responsible for investigating incidences of fraud and failure to comply with the provisions of [Chapter 287]." Section 287.128.8 provides that the Fraud and Noncompliance Unit

---

[7]Section 562.016.3 provides that "[a] person 'acts knowingly', or with knowledge: (1) With respect to his or her conduct or to attendant circumstances when he or she is aware of the nature of his or her conduct or that those circumstances exist; or (2) With respect to a result of his or her conduct when he or she is aware that his or her conduct is practically certain to cause that result."

10

"***shall investigate*** all complaints and ***present any finding of fraud or noncompliance*** to the director, who may refer the file to the attorney general." These provisions require the Fraud and Noncompliance Unit to conduct an investigation, but leave the scope and extent of the investigation to the Unit's discretion. And these provisions contemplate that at the conclusion of the Fraud and Noncompliance Unit's investigation, a determination will be made as to whether there is a finding of fraud or noncompliance that could be presented to the Attorney General.

It would be inconsistent with the intent of these provisions to require a subjective, hindsight analysis of a Fraud and Noncompliance Unit investigation to determine the precise moment when sufficient facts were first discovered to permit referral to the Attorney General, or when (as is argued here), an investigation stopped yielding information not already known or suspected by the investigator. Construing *Frese's* definition of "discovery of the offense" in the subjective, hindsight manner argued by the parties would encourage incomplete investigations, and the premature referral of matters for prosecution, based solely on an investigator's concern that a tribunal might later conclude that the investigator learned enough to permit referral of an offense midway through an otherwise objectively reasonable investigation. In other words, a subjective, hindsight critique of an investigation would usurp the Fraud and Noncompliance Unit's statutory authority and directive to conduct an investigation sufficient to permit it to conclude whether there is a finding of fraud or noncompliance that should be referred to the Attorney General.

11

Instead, to be harmonized with sections 287.128.8 and .10, the definition of "discovery of the offense" set forth in *Frese* necessarily refers to the entirety of an objectively reasonable investigation conducted by the Fraud and Noncompliance Unit. So long as the Fraud and Noncompliance Unit has engaged in an investigation that is objectively reasonable in scope and time frame, then we are bound to conclude that it is engaging in the investigation it is required to undertake by law. And so long as an investigation is objectively reasonable, it cannot be said that the Fraud and Noncompliance Unit has discovered all the facts necessary for it to determine whether there is a finding of fraud or noncompliance that may be referred to the Attorney General for prosecution.

"The interpretation of a statute is a pure question of law, and [] we give the trial court's interpretation no deference." *State v. Rodgers*, 396 S.W.3d 398, 400 (Mo. App. W.D. 2013). Here, the trial court found that the Fraud and Noncompliance Unit discovered Seymour's offense as of February 3, 2014. We do not know, however, whether the trial court did so based on the erroneous belief that the definition of "discovery of the offense" announced in *Frese* requires a subjective, hindsight analysis of when the Fraud and Noncompliance Unit first discovered facts that could have permitted a referral to the Attorney General. Regardless, we are "primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result." *Blue Ridge Bank and Trust Co. v. Trosen*, 309 S.W.3d 812, 815 (Mo. App. W.D. 2010) (quotation omitted). "[T]he judgment will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Id*. (quotation omitted).

Here, the Fraud and Noncompliance Unit's statutory investigation continued after the February 3, 2014 database searches to include telephone contact with Seymour on May 19, 2014, and to include efforts to contact Seymour's insurance agent in the days following the telephone call with Seymour. There is no evidence to suggest, and Seymour does not contend, that the investigative steps taken after February 3, 2014 were not objectively reasonable. However, there was a period of over three months between the investigator's database searches on February 3, 2014, and the investigator's first attempt to contact Seymour in mid-May, 2014 when nothing whatsoever was done to further investigate Seymour. The investigator offered no explanation for this delay. The trial court could have concluded that even though the investigative efforts undertaken by the Fraud and Noncompliance Unit were objectively reasonable in scope, the time taken to complete the investigation was not objectively reasonable. As a result, the trial court could have concluded that the Fraud and Noncompliance Unit's objectively reasonable investigation ended after the February 3, 2014 data bank searches, and that as a result, the accrual period set forth in section 287.128.11 was triggered on that date.

A similar conclusion was reached under analogous circumstances in *State v. Young*, 440 N.E.2d 1379 (Oh. Ct. App. 1981). There, the court held that "discovery of the offense" of knowingly making a false statement in connection with securing state benefits occurred at the "absolute latest within a reasonable period" after the State's administrative agency began an investigation. *Id*. at 1381. The court applied an objective standard to assess the scope and time frame of an investigation to determine when the agency should be deemed to have discovered an offense. *Id*. The court noted that particularly with respect to the

13

time taken to conduct an investigation, the use of an objective standard prevents investigators from "procrastinat[ing] with impunity when they ha[ve] in their possession information or material which indicate[s]" an offense may have been committed. *Id.* The court found that a five month investigation that began with a database search was not objectively reasonable, and that charges later filed as a result of the investigation were time-barred. *Id.*

We therefore conclude that the trial court did not err in granting Seymour's motion for judgment of acquittal based on the statute of limitations in section 287.128.11. Although the scope of the Fraud and Noncompliance Unit's investigation was objectively reasonable in so far as the steps taken to investigate Seymour, the time taken to complete the investigation was not objectively reasonable given a delay of over three months when no investigative efforts were being pursued, despite a strong indication after the database searches on February 3, 2014 that a referable offense may have occurred. The Fraud and Noncompliance Unit's objectively reasonable investigation therefore ended on February 3, 2014. Since Seymour was charged with violating section 287.128.7 on May 17, 2017, prosecution of the charge was time-barred by section 287.128.11.

Point denied.

### Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

14

All concur